UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER MILLEA | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:06-cv-1929 (VLB) |
| METRO-NORTH RAILROAD COMPANY, | : | |
|     Defendant. | : | January 8, 2010 |

**MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW [Doc. #120], GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS [Doc. #122], AND DENYING DEFENDANT'S MOTION FOR COSTS [Doc. #127]**

The Plaintiff, Christopher Millea, filed this action against his employer, Metro-North Railroad Company (the "Defendant"), asserting claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* and Connecticut state law. Specifically, Count One of the Second Amended Complaint alleged that the Defendant violated the FMLA by interfering with the Plaintiff's exercise of his FMLA rights. Count Two alleged that the Defendant violated the FMLA by taking adverse employment action against the Plaintiff based upon his absences from work that should have been covered and protected by the FMLA. Count Three alleged that the Defendant intentionally inflicted emotional distress on the Plaintiff by denying his FMLA rights and disciplining him for exercising those rights. On May 19, 2009, the jury returned a verdict in favor of the Plaintiff on Count One, for which it awarded him $612.50. The jury found in favor of the Defendant on Counts Two and Three. Presently pending before the Court are the Defendant's motion for judgment as a matter of law as to Count One of the Plaintiff's Second Amended

Complaint [Doc. #120], the Plaintiff's motion for an award of attorney's fees and costs [Doc. #122], and the Defendant's motion for costs [Doc. #127].[1]  For the reasons stated below, the Defendant's motion for judgment as a matter of law and motion for costs are DENIED.  The Plaintiff's motion for attorney's fees and costs is GRANTED IN PART AND DENIED IN PART, and the Court awards the Plaintiff $204.17 in attorney's fees and $18,642.85 in costs.

   I.   Defendant's Motion for Judgment as a Matter of Law

During trial, on May 14 and 15, 2009, the Defendant orally moved for judgment as a matter of law with respect to the Plaintiff's claim of interference under the FMLA (Count One).  The Court denied the Defendant's oral motions.  See Doc. ## 107 and 108.  The Defendant now renews it's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b).

On May 19, 2009, the jury returned a verdict in favor of the Plaintiff on his interference claim, for which it awarded him $612.50.  In order to reach this decision, the jury completed a verdict form approved by both parties on which it answered both interference claim interrogatories in the affirmative.  See Doc. #117.  The first interrogatory read:  "Do you find that the plaintiff has proved by a preponderance of the evidence that he gave proper notice of his intent to take FMLA leave on September 18 and 19, 2006?"  Id.  The Defendant submits that the

---

[1] The Court grants the parties' request, pursuant to Fed. R. Civ. P. 58, to treat the Plaintiff's motion for an award of attorney's fees and costs and the Defendant's motion for costs as timely filed motions under Fed. R. Civ. P. 59 for purposes of calculating the time for filing any Notice of Appeal pursuant to Fed. R. App. P. 4.  See Doc. ## 125 and 127.

jury's affirmative response to this interrogatory does not reflect the overwhelming evidence adduced throughout the trial, which it claims established that the Defendant lawfully requires employees to notify their supervisors when they intend to take FMLA leave, and that the plaintiff failed to do so on these particular dates.

"A district court must deny a motion for judgment as a matter of law unless, viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." Cruz v. Local Union Number 3 of the IBEW, 34 F.3d 1148, 1154-55 (2d Cir. 1994). Such a motion can only be granted "when (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." Hubbard v. Total Communications, Inc., 576 F. Supp. 2d 314, 318 (D. Conn. 2008).

As the Plaintiff correctly states, the Department of Labor's ("DOL") regulation for notice of unforeseeable leave is Section 825.303, which was presented into evidence at trial. The version of the regulation in effect at the time of the events in question provided as follows:

> (a) When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA

**3**

> leave as soon as practicable under the facts and circumstances of the particular case . . . In case of a medical emergency requiring leave because of an employee's own serious health condition . . . , written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.
>
> **(b)** The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ("fax") machine or other electronic means . . . Notice may be given by the employee's spokesperson (*e.g.*, spouse, adult family member or other responsible party) if the employee is unable to do so personally . . . The employer will be expected to obtain any additional required information through informal means.

29 C.F.R. § 825.303.[2] The Court charged the jury that the Defendant's internal rules "cannot be more stringent than the DOL regulations." Therefore, the jury was aware that the applicable DOL regulation in effect at the time of the events in question permitted the Plaintiff to provide notice "as soon as practicable under the circumstances of the particular case," and that he was only required to give notice to his employer rather than a particular supervisor.

At trial, the jury heard evidence that the Plaintiff had suffered an intense panic attack due to a threatening phone call from his supervisor, Earl Vaughn, at twelve noon on September 18, 2006. After receiving the call from Vaughn, the Plaintiff called his doctor and was advised to leave work and not to speak to Vaughn. The Plaintiff then gave notice of his unforeseen leave to his employer by notifying his lead clerk, Garrett Sullivan, and left work. Although Sullivan knew of Vaughn's notice policy that he be notified of any absence directly, he did not

---

[2] **This regulation was amended on January 16, 2009 to provide that employees seeking to use unforeseeable FMLA leave "must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c).**

4

inform Vaughn immediately that the Plaintiff had left on an unforeseen FMLA leave.  Given the evidence presented regarding the Plaintiff's PTSD and panic attacks and the fact that the panic attack he suffered on September 18th was precipitated by a threatening phone call from his supervisor, along with the fact that the Plaintiff's doctor instructed him not to personally call Vaughn, the jury clearly had an evidentiary basis to conclude that the notice the Plaintiff provided to Sullivan constituted proper notice to his employer "under the facts and circumstances of his particular case."  Under the regulation in effect at the time, notifying his employer was all that was required of the Plaintiff.  The regulations had not yet been amended to clarify that an employer has the right to require that an employee follow a particular procedure.  Furthermore, since Sullivan knew of Vaughn's policy that he be notified of any absence directly, the jury could have reasonably inferred that the Plaintiff expected Sullivan to call Vaughn and therefore that by notifying Sullivan he indirectly notified Vaughn.

       The Defendant points to Metro-North's Operation Procedure No. 21-022, entitled "Family & Medical Leave," in support of it's argument that it is entitled to judgment as a matter of law.  Procedure No. 21-022 states:  "If the need for FMLA leave is not foreseeable, employees must give notice to their supervisor as soon as possible."  The Procedure does not specify the means by which the supervisor is to receive the notice.  According to the Defendant, the policy in place in the Stamford storeroom where the Plaintiff worked required that all employees directly notify Vaughn, his supervisor, regarding any absences.  However, the

regulation in effect at the time of the events in question only required the Plaintiff to notify his "employer" of his FMLA absence, and did not require him to notify any particular person.  As the Court charged the jury, absent an objection from the defense, the Defendant's internal policies were invalid to the extent that they were more stringent than the DOL regulations.

Moreover, even assuming the procedure at issue to be valid, the testimony at trial established that it was an acceptable practice in other Metro North storerooms for employees to provide notice of an FMLA absence by calling their lead clerk, who then transmitted the information to the supervisor.  The Department's top manager, Ray Lopez, confirmed that this practice was acceptable to supervisors other than Vaughn.  In addition, the jury heard testimony from New Haven clerk Paul Constantinople, Jr., who had personally called the lead clerk instead of Vaughn while Vaughn was serving as supervisor in the New Haven storeroom.  Indeed, Vaughn himself admitted that the New Haven clerks under his supervision called the lead clerk to provide notice of absences, rather than calling him.

The Defendant contends that evidence of absence notification procedures in place in storerooms other than the Stamford storeroom are irrelevant.  However, as FMLA Compliance Officer Valentine testified, Metro North's internal notice rules should be uniform and applied equally to all employees.  The Procedure upon which the Defendant relies requires only that employees "give notice to their supervisor as soon as possible."  The jury could have properly relied upon

6

evidence that employees within the Storeroom Department may comply with Procedure No. 21-022 by notifying their lead clerk of unforeseeable FMLA absences, who then transmitted that information to the supervisor. This is precisely what occurred in this case. The Plaintiff promptly notified his lead clerk, Garrett Sullivan, of his FMLA absences on September 18 and 19, 2006.

In sum, there was sufficient evidence adduced at trial to support the jury's finding that the Plaintiff "gave proper notice of his intent to take FMLA leave on September 18 and 19, 2006." This finding was not the result of "sheer surmise and conjecture." <u>Hubbard</u>, 576 F. Supp. 2d at 318. Therefore, the Defendant's motion for judgment as a matter of law is denied.

## II. <u>Plaintiff's Motion for Attorney's Fees and Costs</u>

The Plaintiff moves, pursuant to 29 U.S.C. § 2617(a)(3) of the FMLA and Fed. R. Civ. P. 54, for an award of attorney's fees in the amount of $144,792 and costs in the amount of $19,076.33. The Defendant objects to the award, claiming that it is unreasonable in light of the results obtained by the Plaintiff.

The FMLA authorizes an award of reasonable attorney's fees in cases where a violation of the FMLA is established. <u>See</u> 29 U.S.C. § 2617(a)(3) ("The court in such action shall, in addition to any judgment awarded the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant."). However, "[a] plaintiff who has prevailed in the litigation has established his eligibility for, not his entitlement to, an award of fees. The district court retains discretion to determine, under all the

circumstances, what constitutes a 'reasonable' fee, and in appropriate circumstances may conclude that, even though a plaintiff has formally prevailed, no award of fees to that plaintiff would be reasonable." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998) (internal citations omitted).

As the United States Supreme Court has explained, where, as here, a plaintiff "has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. The most critical factor is the degree of success obtained." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983). Thus, "[w]here the damage award is nominal or modest, the injunctive relief has no systematic effect of importance, and no substantial public interest is served, a substantial fee award cannot be justified." Carroll v. Blinken, 105 F.3d 79, 81 (2d Cir. 1997).

In Farrar v. Hobby, 506 U.S. 103 (1992), the Supreme Court reemphasized the primacy of the degree of success obtained in determining the reasonableness of an award of attorney's fees. As the Supreme Court stated, "Where recovery of private damages is the purpose of civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought. Such a comparison promotes the

court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case.  Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, or multiplying the number of hours reasonably expended by a reasonable hourly rate." Id. at 114-15 (internal citations and quotation marks omitted).[3]  In Farrar, the district court awarded the plaintiff $280,000 in attorney's fees after the jury awarded the plaintiff nominal damages of $1 on his civil rights claim pursuant to 42 U.S.C. §§ 1983 and 1985.  The plaintiff had requested $17 million in damages prior to trial.  Id. at 106.  The Supreme Court criticized the district court for failing to consider the relationship between the extent of success and the amount of the fee awarded, and concluded that the Plaintiff was not entitled to any attorney's fees at all.  Id. at 115.

Courts in this Circuit often apply the three-part test developed by Justice O'Connor in her concurring opinion in Farrar to determine whether a prevailing plaintiff's recovery was de minimis, such that low attorney's fees or no attorney's fees should be awarded.  See, e.g., Sclant v. Victor Belata Belting Co., No. 94-CV-

---

[3] The twelve factors bearing on reasonableness to which the Supreme Court was referring are the factors articulated by the Fifth Circuit in Johnson v. Ga. Highway Express Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), namely:  "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Hensley, 461 U.S. at 430 n.3 (1983) (citing Johnson, 488 F.2d at 717-719)).

0915E(Sc), 2001 U.S. Dist. LEXIS 16539, at *9 (W.D.N.Y. Oct. 2, 2001); Sowemimo v. D.A.O.R. Security, Inc., No. 97 CIV. 1083 RLC, 2000 WL 890229, at *9 (S.D.N.Y. June 30, 2000); Adams v. Rivera, 13 F. Supp. 2d 550, 552 (S.D.N.Y. 1998); Haywood v. Koehler, 885 F. Supp. 624, 629 (S.D.N.Y. 1995). The three factors articulated by Justice O'Connor are (1) whether there is "a substantial difference between the judgment recovered and the recovery sought," (2) "the significance of the legal issue on which the plaintiff claims to have prevailed," and (3) whether the plaintiff "accomplished some public goal other than occupying the time and energy of counsel, court, and client." Farrar, 506 U.S. at 121-22 (O'Connor, J., concurring).

With respect to the first factor, the Plaintiff's FMLA claims carried a maximum potential recovery of $11,600 ($5,800 in lost wages, plus liquidated damages in the same amount). The Plaintiff recovered $612.50, which represents only about 5.3% of the recovery sought on these claims. Moreover, the Plaintiff also asserted a claim for intentional infliction of emotional distress, for which he sought open-ended compensatory damages. Although the Plaintiff's counsel did not argue for a particular amount of damages for the intentional infliction of emotional distress claim during his closing argument, the amount of attorney's fees and costs expended (over $180,000 in attorney's fees and over $19,000 in costs) suggests that the Plaintiff anticipated a large potential recovery on the intentional infliction of emotional distress claim.[4] Therefore, the Court finds that

---

[4] The Defendant also points to the Plaintiff's settlement demand prior to trial as evidence of the substantial disparity between the judgment recovered and the recovery sought. However, "[i]t would be improper for the Court to consider the Plaintiff's settlement demands as evidence of [his] limited success at trial."

there is a substantial difference between the recovery sought by the Plaintiff and the judgment he received.

With respect to the second factor, the Plaintiff argues that the importance of this case was not dependent on the amount of economic damages awarded, but instead rested on proving that the Defendant violated the FMLA and that such violations will not be tolerated by its employees.  However, the Plaintiff did not assert a claim for non-monetary relief, and "[t]he moral satisfaction of knowing that a jury concluded that defendant had discriminated against [him] does not entitle plaintiff to attorney fees."  Schlant, 2001 U.S. Dist. LEXIS, at *13.  Furthermore, this case did not involve any novel legal issues significant to the legal community as a whole rather than the Plaintiff individually.  On the contrary, the Plaintiff's successful claim relied on an ambiguous regulation that was subsequently clarified in a manner which, had it been clarified earlier, might have subjected his claim to dismissal on summary judgment.  As the Second Circuit has recognized, the "vast majority of civil rights litigation does not result in ground-breaking conclusions of law, and therefore, will only be appropriate candidates for fee awards if a plaintiff recovers some significant measure of damages or other meaningful relief."  Pino v. Locascio, 101 F.3d 235, 239 (2d Cir. 1996).  As in most civil rights cases, "there is no particular significance to the legal issue on which plaintiff prevailed because such did not establish a new theory of liability and the resolution of such has no significance beyond the

---

Pappas v. Watson Wyatt & Co., 2008 WL 45385, at *8 (D. Conn. Jan. 2, 2008) (citing Ortiz v. Regan, 980 F.2d 138, 140 (2d Cir. 1992)).

11

parties to this case." Schlant, 2001 U.S. Dist. LEXIS, at *13.

Finally, as to the third factor, the Plaintiff indicates that this case serves an important goal because the jury's verdict declaring that the Defendant's conduct violated the FMLA will have a substantial impact on the future conduct of the Defendant's management and employees.  However, the Court does not believe that this case served any important public purpose.  The jury awarded judgment to the Plaintiff on his interference claim only.  In order to establish the interference claim, the Plaintiff needed to prove only that he gave proper notice of his intent to take FMLA leave on September 18 and 19, 2006, and that the Defendant denied his right to take FMLA leave on those dates.  As discussed above, the jury was instructed on the applicability of a DOL regulation requiring only that an employee notify his employer of his need for unforeseeable FMLA leave, which has since been amended to require employees to comply with the employer's usual and customary notice and procedural requirements for requesting leave.  See 29 C.F.R. § 825.303(c).  The jury also heard evidence that the Defendant had a written procedure in place requiring employees to notify their supervisors of unforeseen FMLA leave, but that implementation of the procedure varied such that employees at certain storerooms were required to personally notify their supervisor while employees at other storerooms could discharge their notice obligation by notifying their lead clerk rather than the supervisor directly.  In the Court's view, the jury's verdict in favor of the Defendant on the retaliation and intentional infliction of emotional distress claims sent a message that the Defendant did not retaliate against the Plaintiff for taking FMLA leave and did not engage in extreme

**12**

and outrageous conduct with respect to it's denial of the Plaintiff's request for FMLA leave on September 18 and 19, 2006, but that it only nominally violated the FMLA.

In summary, application of the factors identified by Justice O'Connor in her concurrence in <u>Farrar</u> demonstrates that the Plaintiff's recovery was de minimis and therefore he does not qualify for a substantial attorney's fee award in this case.  While it is true that "the public interest in encouraging injured parties to vindicate their civil rights is such that attorneys' fees should sometimes be awarded to prevailing plaintiffs even when damages are very modest[,] . . . there is also a public interest in preventing dubious or trivial claims from flooding the federal courts."  <u>Adams v. Rivera</u>, 13 F. Supp. 2d 550, 553 (S.D.N.Y. 1998) (denying plaintiff's motion for attorney's fees where plaintiff received $1,080 in compensatory damages and prevailed against only two of five defendants on one of four claims).

Because the Court holds that the Plaintiff's recovery was de minimis, under <u>Farrar</u> the Court may award either low or no attorney's fees without addressing the twelve <u>Johnson</u> factors bearing on reasonableness.  506 U.S. at 115.  The Court finds that the Plaintiff is entitled to an award of attorney's fees because he recovered more than a nominal amount in damages.  However, the requested amount of $144,792 must be greatly reduced to account for the Plaintiff's limited degree of success.  The Court agrees with the Western District of New York's holding in <u>Schlant</u> that the customary contingency fee of one-third of the total recovery is a reasonable amount of attorney's fees where a Plaintiff's recovery is

13

de minimis. See Schlant, 2001 U.S. Dist. LEXIS, at *16-*17 (awarding $277.45 in attorney's fees where plaintiff recovered $832.34); see also Rivera v. T.P. Horton, 7 F. Supp. 2d 147, 150 (N.D.N.Y. 1998) (awarding $0.66 in attorney's fees where plaintiff recovered $2); McCardle v. Haddad, 131 F.3d 43, 53-55 (2d Cir. 1997) (affirming award of $0.33 in attorney's fees where plaintiff recovered $1). Accordingly, the Court awards the Plaintiff $204.17 in attorney's fees, representing one-third of the damages awarded by the jury at trial.

The Plaintiff also requests $19,076.33 in costs. Fed. R. Civ. P. 54(d)(1) states, in relevant part: "Unless a federal statute, these rules, or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the prevailing party." Similarly, L. Civ. R. 54(a) states that "[t]he Clerk shall enter an order allowing costs to the prevailing party unless the Court otherwise directs."

"Under this [Rule 54(d)] analysis, for a plaintiff to be considered a prevailing party, he need not have succeeded on the central issue in the case, and need not have obtained the primary relief sought. It is sufficient that the plaintiff succeeded on any significant issue in the litigation, regardless of the magnitude of the relief obtained, if he received actual relief on the merits of his claim that materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. Indeed, it is axiomatic that a plaintiff need not sustain his entire claim to be regarded as the prevailing party . . . Under this prevailing party standard, a plaintiff who wins nominal damages is a prevailing party." Bristol Tech., Inc. v. Microsoft Corp., 127 F. Supp. 2d 85, 93 (D. Conn.

2000) (internal citations and quotation marks omitted); see also K-2 Ski Co. v. Head Ski Co., Inc., 506 F.2d 471, 477 (9th Cir. 1974) ("In general, a party in whose favor judgment is rendered by the district court is the prevailing party . . . Although a plaintiff may not sustain his entire claim, if judgment is rendered for him he is the prevailing party."); see generally 10 James Wm. Moore et al., Moore's Federal Practice, § 54.101[3] (3d ed. 2009) ("The cases that have interpreted the 'prevailing party' language of Rule 54(d)(1) generally state simply that the prevailing party is the party in whose favor judgment was entered, even if that judgment does not fully vindicate the litigant's position in the case.").

In this case, the jury returned a verdict in favor of the Plaintiff on his interference claim, and judgment was entered for the Plaintiff in the amount of $612.50.  See Doc. #119.  This judgment "modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay."  Bristol, 127 F. Supp. 2d at 93.  Therefore, the Plaintiff is the prevailing party for purposes of Rule 54(d).

There is a strong presumption in favor of awarding costs to the prevailing party.  See Remington Products, Inc. v. North Am. Phillips, Corp., 763 F. Supp. 683, 686-87 (D. Conn. 1991).  As the Second Circuit has observed, "[t]he award of costs against the losing party is a normal incident of civil litigation and is the rule rather than the exception."  Mercy v. County of Suffolk, 748 F.2d 52, 54 (2d Cir. 1984). Therefore, "unsuccessful parties bear some burden of showing circumstances sufficient to overcome the presumption" favoring the award of costs to the

prevailing party.  Remington, 762 F. Supp. at 687 (quoting Baez v. U.S. Dep't of Justice, 684 F.2d 999, 1004 (D.C. Cir. 1982)).

The Defendant argues that the amount of costs awarded to the Plaintiff should be reduced to exclude costs attributable to the Plaintiff's unsuccessful claims, and should be further reduced to reflect the Plaintiff's limited success.  Although the Court has the discretionary authority under Rule 54(d) to deny or reduce costs, it is unpersuaded that the reduction requested by the Defendant is appropriate in this case.  The Defendant has not identified any cases from this Circuit in which a court has reduced costs on the basis of the prevailing party's limited success.  Instead, in cases in which courts in this Circuit have reduced costs, there was a showing of bad faith or misconduct by the prevailing party during the litigation.  See, e.g., Electronic Specialty Co. v. Int'l Controls Corp., 47 F.R.D. 158, 160 (S.D.N.Y. 1969) (recognizing that cases in which courts have denied costs "involve culpable actions by the prevailing party which justify the 'penalty' of the denial of costs"); Remington, 763 F. Supp. at 688 (denying costs to prevailing party where that party refused to provide any discovery in "a bad-faith effort to avoid complying with the rules governing discovery proceedings").  The Defendant has not asserted and the Court is unaware of any bad faith or misconduct on the part of the Plaintiff in this case, and therefore there is no reason to penalize him by reducing his award of costs.

The Defendant further argues that $433.48 in costs for Dr. Shapiro's deposition should be stricken because Dr. Shapiro was not deposed in connection

16

with this case.  The Plaintiff does not object to the removal of this cost.  Accordingly, the Court awards the Plaintiff $18,642.85 in costs.

### III.  Defendant's Motion for Costs

The Defendant moves for an award of costs pursuant to Fed. R. Civ. P. 54(d)(1) and L. Civ. R. 54 in the amount of $12,823.68.  As stated previously, the Plaintiff submitted three claims to the jury:  1) interference under the FMLA; 2) retaliation under the FMLA; and 3) intentional infliction of emotional distress under Connecticut common law.  On May 19, 2009, the jury returned a verdict in favor of the plaintiff on his interference claim and awarded him $612.50.  The jury found in favor of the Defendant on the retaliation and intentional infliction of emotional distress claims.  The Defendant claims that it is entitled to an award of the costs related to the retaliation and intentional infliction of emotional distress claims as the prevailing party on those claims.  It calculates these costs to total $12,823.68.

As stated above, under the law of this Circuit, the Plaintiff, rather than the Defendant, is the prevailing party in this litigation despite his modest success.  The Court is unpersuaded by the Defendant's argument that it should be awarded costs because it was the prevailing party as to two of the three claims submitted to the jury.  It is not necessary that the Plaintiff succeed on all of its claims in order to be considered the prevailing party.  In Bristol, for instance, the Court (Hall, J.) found the Plaintiff to be the prevailing party for purposes of a Rule 54(d)(1) award of costs even though it was successful at trial as to only one of the fourteen claims alleged.  The Defendant has cited no authority from this Circuit

17

supporting its entitlement to an award of costs pursuant to Rule 54(d) when it was not the prevailing party in this case. Therefore, the Defendant's motion for costs is denied.

### III.  Conclusion

Based on the above reasoning, the Defendant's motion for judgment as a matter of law [Doc. #120] and motion for costs [Doc. #127] are DENIED. The Plaintiff's motion for attorney's fees and costs [Doc. #122] is GRANTED IN PART AND DENIED IN PART, and the Court awards the Plaintiff $204.17 in attorney's fees and $18,642.85 in costs.

                                        IT IS SO ORDERED.

                                        /s/
                                    Vanessa L. Bryant
                                    United States District Judge

Dated at Hartford, Connecticut:  January 8, 2010.